Filed 11/3/21  P. v. Brown CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092735 |
| Plaintiff and Respondent, | (Super. Ct. No. 05F05944) |
| v. | |
| DERYUS BROWN, | |
| Defendant and Appellant. | |

In 2006, a jury found defendant Deryus Brown guilty of first degree murder with a special circumstance of committing murder by shooting a firearm from a motor vehicle, plus a gang enhancement and a firearm enhancement.  We affirmed the judgment on appeal.  (*People v. Brown* (July 30, 2008, C054015) [nonpub. opn.] (*Brown*).)[1]

---

[1] We granted defendant's motion to incorporate *Brown* by reference.

1

In April 2019, defendant sought resentencing pursuant to Penal Code section 1170.95[2] in light of changes brought about by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), which amended section 189 to limit the scope of liability for murder on a felony-murder theory. The trial court denied the petition, concluding that the jury's special circumstances finding barred defendant from relief because the jury found defendant harbored the intent to kill. Defendant appeals the denial of the petition, arguing the record of conviction did not conclusively establish he harbored an intent to kill. We affirm the order denying defendant's petition for resentencing

## I. BACKGROUND

The relevant facts are taken from our unpublished opinion in *Brown, supra*, C054015. Defendant drove the car in a drive-by gang shooting, with front passenger Matthew Vallejo as the "shot caller," and rear passenger Greg Dorsey as the shooter. Two teenage boys saw a blue car drive through an apartment complex multiple times. The first time, a passenger yelled at the Sureños at the complex and flashed gang signs. The second time, the car drove through the complex again, with multiple people in it. The third time, the car pulled up to an SUV in the complex, and one of the teenage boys heard gunshots. The car then sped off. Mario Vasquez was found shot dead in the front seat of the SUV with two gunshot wounds.

The jury was instructed with CALCRIM No. 735 that to find the special circumstance true that defendant committed murder by shooting a firearm from a motor vehicle, it had to find that at the time of the shooting, the defendant intended to kill.[3] The

---

[2] Undesignated statutory references are to the Penal Code.

[3] CALCRIM No. 735 as given provides: "The defendant is charged with the special circumstance of committing murder by shooting a firearm from a motor vehicle. [¶] To prove that this special circumstance is true, the People must prove that: [¶] 1. The perpetrator shot a firearm from a motor vehicle, killing Mario Vasquez; [¶] 2. The

2

jury found defendant guilty of first degree murder with a special circumstance of committing murder by shooting the firearm from a motor vehicle (§§ 187, subd. (a), 190.2, subd. (a)(21)), and further found true the allegation that defendant committed the murder for the benefit of, at the direction of, or in association with a criminal street gang, (§ 186.22, subd. (b)(1)), and that a principal in the crime personally discharged and used a firearm causing the victim's death (§ 12022.53, subd. (e)(1)). Thereafter, the trial court sentenced defendant to life without the possibility of parole for murder, plus 25 years in state prison. On appeal, we affirmed defendant's convictions. (*Brown, supra*, C054015.) The trial court, this court, and the California Supreme Court all denied defendant's petition for writ of habeas corpus seeking relief under *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*).[4] In 2018, the Governor commuted defendant's sentence to 20 years to life, but did not pardon defendant in any respect.

In April 2019, defendant filed a petition for resentencing under section 1170.95. The declaration attached to his petition stated: (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of first degree felony murder or murder under the natural and probable consequences doctrine; (2) he was convicted of first degree murder by jury pursuant to the felony murder rule or the natural and probable consequences doctrine; and (3) he could not now be convicted of murder because of the changes made to sections 188 and 189, effective January 1, 2019. Defendant also requested appointment of counsel.

Defendant was appointed counsel and the parties submitted briefing. The trial court, relying on our *Brown* opinion and the jury instructions from defendant's trial,

---

perpetrator intentionally shot at a person who was outside the vehicle; [¶] AND [¶] 3. At the time of the shooting, the defendant intended to kill."

[4] *Chui* held, in relevant part, that an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine. (*Chui, supra*, 59 Cal.4th at p. 166.)

denied the petition. It explained: "At trial, the jury was instructed with CALJIC No. 400, that a 'perpetrator' is the one who committed the crime, as opposed to an 'aider and abettor' of the crime. The jury was also instructed with CALJIC No. 401 on direct aiding and abetting, and with CALJIC No. 403 on the natural and probable consequences doctrine of accomplice liability, that the jury could find [defendant] guilty of 'murder' based on the commission of a target offense of assault or breach of the peace, the natural and [probable] consequence of which was 'murder.' The jury was also instructed with CALCRIM No. 520 on malice aforethought murder, and with CALCRIM No. 521 on first degree murder, containing only an instruction on drive-by shooting murder that 'he' shot a firearm from a motor vehicle, 'he' intentionally shot at a person who was outside the vehicle, and 'he' intended to kill that person. There was no instruction given on willful, deliberate, premeditated murder with intent to kill. In comparison to the CALCRIM No. 521 instruction that was given, the jury was also instructed with CALCRIM No. 735, on the special circumstance of committing murder by shooting a firearm from a motor vehicle, that to find the special circumstance true the jury needed to find that 'the perpetrator' shot a firearm from a motor vehicle, killing the victim, 'the perpetrator' intentionally shot at a person who was outside the vehicle, and at the time of the shooting, 'the defendant' intended to kill. There was no instruction given on any theory of felony murder."

The trial court found the jury's finding on CALCRIM No. 735, drive-by special circumstances, to be dispositive. It reasoned that although the jury had been instructed on the natural and probable consequences doctrine, it found the drive-by special circumstances to be true, thus finding that "the 'perpetrator,' meaning the actual shooter, intentionally fired the shot, but that 'the defendant,' meaning [defendant] as he was the only person being tried before the jury, had to have harbored intent to kill." Consequently, the trial court concluded that "when the jury found [defendant] guilty of first degree murder and found true the drive-by special circumstance, it necessarily did so

4

by finding that [defendant] had harbored intent to kill in aiding and abetting the drive-by shooting. As such, [defendant] necessarily was not found guilty of first degree murder based on the natural and probable consequences doctrine, but instead on a direct aiding and abetting theory that required that he harbored the intent to commit the murder in aiding and abetting the murder, as instructed in CALCRIM No. 401." Thus, the trial court found that defendant was ineligible for relief under section 1170.95 because he was not convicted on either a theory of felony-murder or under the natural and probable consequences doctrine of accomplice liability.

The trial court further noted that by denying defendant's habeas petition under *Chiu, supra*, 59 Cal.4th 155, "this court, the Third District, and the California Supreme Court all determined that [defendant] was not convicted by the jury under a natural and probable consequences theory of accomplice liability, but, instead, in finding true the special circumstance, the jury found defendant guilty as a direct aider and abettor." Finally, the trial court reviewed the evidence as summarized in our *Brown* opinion and concluded that "[a] trier of fact, on this evidence, had substantial evidence upon which to conclude beyond a reasonable doubt" that defendant drove up alongside the victim "with the intent to aid and abet the shooter in shooting and killing the victim, thereby intending the killing itself."

## II. DISCUSSION

Defendant argues that the trial court erred by denying his petition at the prima facie stage without ordering an evidentiary hearing. He contends that his murder conviction could have been predicated on the natural and probable consequences theory, which is sufficient to state a prima facie case under section 1170.95. Defendant concedes that the jury's special circumstances finding "reflects the jury's finding that [defendant] harbored an intent to kill," but argues that "it does not necessarily mean the jury made the same finding with respect to [defendant]'s first degree murder conviction." Thus, he argues that the trial court engaged in improper fact finding to deny his petition, as "the

5

record of conviction [did] not conclusively establish that [defendant]'s murder conviction rested on a finding of intent to kill." (Emphasis omitted.) We are not persuaded.

A.    *Senate Bill No. 1437*

Senate Bill No. 1437, which became effective on January 1, 2019, was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The legislation accomplished this by amending sections 188 and 189 and adding section 1170.95 to the Penal Code.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [(defining first degree murder)] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill No. 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the

6

following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial . . . . [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019.”  (§ 1170.95, subd. (a).)

Once a complete petition is filed, “[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.”  (§ 1170.95, subd. (c).)

A trial court may consider a defendant’s record of conviction during its prima facie review of an 1170.95 petition.  (*People v. Lewis* (2021) 11 Cal.5th 952, 970-972.) “The record of conviction will necessarily inform the trial court’s prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless.”  (*Id*. at p. 971.)  Appellate opinions are generally considered to be part of the record of conviction.  (*Id.* at p. 972.)  Jury instructions may also be considered as part of the record of conviction.  (See *People v. Gomez* (2020) 52 Cal.App.5th 1, 16, review granted Oct. 14, 2020, S264033.)

B.     *Analysis*

As set forth above, to be eligible for relief pursuant to section 1170.95, defendant must not have been the actual killer, *must not have acted with the intent to kill*, and must not have been a major participant in the underlying felony who acted with reckless indifference to human life.  (§§ 189, subd. (e), 1170.95, subd. (a)(3).)  Here, the jury

7

found true the special circumstances pursuant to section 190.2, subdivision (a)(21), which imposes a sentence of death or life without the possibility of parole for a murder involving the discharge of a firearm from a motor vehicle. As reflected in the jury instructions, to make such findings, the jury had to find that defendant intended to kill the victim. Thus, because the jury found defendant intended to kill, defendant is barred from relief under the plain language of the statute.

Indeed, contrary to defendant's assertion, the jury's special circumstances finding in this case defines the theory underlying his murder conviction and forecloses the possibility that the jury convicted defendant under the natural and probable consequences doctrine. The natural and probable consequences doctrine was an exception to the general malice requirement and provided that a person who aids and abets a confederate in the commission of a criminal act is liable " 'not only for that crime (the target crime), but also for any other offense (nontarget crime) [including murder] committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted.' " (*People v. Johns* (2020) 50 Cal.App.5th 46, 58.) Because the jury here found that defendant acted with express malice, i.e., harbored an intent to kill, the jury could not have convicted defendant under the natural and probable consequences doctrine. Instead, the jury must have convicted him on the alternative direct aiding and abetting theory, which requires that defendant harbored the intent to commit the murder in aiding and abetting the murder. Thus, defendant was not convicted under one of the theories necessary to obtain relief under section 1170.95: felony murder or the natural and probable consequences doctrine. And, defendant could still be convicted of murder following the changes made to sections 188 and 189 made effective January 1, 2019. He is therefore barred from resentencing under the statute.

Defendant's reliance on *People v. Duchine* (2021) 60 Cal.App.5th 798 also does not persuade us otherwise. In *Duchine*, the appellate court found that the trial court erred by engaging in judicial fact-finding at the prima facie stage, including weighing evidence

8

and assessing credibility, and by concluding that defendant "theoretically" could have been found guilty under a felony murder theory. (*Id.* at p. 816.) Here, by contrast, the record of conviction conclusively shows that the jury found defendant harbored an intent to kill, thus barring defendant from section 1170.95 relief. Although the trial court did also arguably engage in judicial factfinding when it conducted a substantial evidence review and found that "any reasonable trier of fact 'could' have convicted [defendant] of first degree murder on the evidence that was presented at trial, without any instruction on either [felony-murder or natural and probable consequences] theory," this alternative analysis did not prejudice defendant, because the jury's special circumstances finding still definitively forecloses defendant from relief. (See *People v. Daniel* (2020) 57 Cal.App.5th 666, 676 [the petitioner bears the burden of showing it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing] review granted Feb. 24, 2021, S266336; see also *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Finally, we note that following briefing, we received a letter from defendant pursuant to California Rules of Court, rule 8.254.[5] The letter informed us, in relevant part, that Senate Bill No. 775 (2021-2022 Reg. Sess.) will go into effect in January 2022, amending section 1170.95, subdivision (c) to require a hearing at the prima facie stage,

---

[5] Defendant's letter does not strictly comply with California Rules of Court, rule 8.254, subdivision (b), which permits only (1) citation to new authority and (2) citation to the corresponding relevant page(s) in the brief, specifying that "[n]o argument or other discussion of the [cited] authority is permitted in the letter." Defendant's letter cites to new authority and, rather than citing the relevant pages in the briefs, instead explains how the authority is relevant to this case. Rather than strike the letter, we have considered the authorities set forth in the letter and disregarded any language that is not in compliance with subdivision (b).

which defendant here did not receive.[6]  (§ 1170.95, subd. (c) ["After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief"].)  However, even assuming defendant is entitled to the benefits of Senate Bill No. 775, the trial court's failure to hold a hearing was harmless under *People v. Watson* (1956) 46 Cal.2d 818.  A hearing could not have altered the jury verdict, which is dispositive to defendant's petition.  (See *People v. Lewis*, *supra*, 11 Cal.5th at pp. 957-958 [deprivation of the defendant's right to counsel under section 1170.95 was state law error subject to *Watson* harmless error analysis].)  Accordingly, section 1170.95, subdivision (c) as amended does not change our analysis.

## III.  DISPOSITION

The trial court's denial of defendant's petition is affirmed.


/S/

_____

RENNER, J.


We concur:

/S/

_____

HULL, Acting P. J.

/S/

_____

KRAUSE, J.

_____

[6] The letter also cites to *People v. Lewis*, *supra*, 11 Cal.5th 952, which we have incorporated into our opinion.  The letter's citation to Senate Bill No. 775's amendment to section 1170.95, subdivision (d)(3) is not relevant here because this subdivision applies to resentencing hearings.

10